No. 26-1674

# In the United States Court of Appeals
## For the Eighth Circuit

The State of Missouri, et al.,

*Plaintiffs-Appellants*,

v.

Todd Blanche, in his official capacity as the Acting Attorney General of the United States of America, et al.,

*Defendants-Appellees*.

---

Appeal from the U.S. District Court for the Eastern District of Missouri
Case No. 4:24-cv-01473-SEP

---

**BRIEF OF APPELLANTS**

---


**CATHERINE L. HANAWAY**
Missouri Attorney General

William J. Seidleck #77794MO
*Principal Deputy Solicitor General*
Ryan Dugan #77805MO
Victoria Lowell #76461MO
*Assistant Solicitors General*

815 Olive Street, Suite 200
St. Louis, MO 63101
William.Seidleck@ago.mo.gov
Ryan.Dugan@ago.mo.gov
Victoria.Lowell@ago.mo.gov
Tel. (573) 301-5359

*Counsel for Appellants*

## SUMMARY OF THE CASE

For the last twenty years, the Department of Justice has engaged in an incredibly consistent pattern. At the last second before the November general election, it issues a press release announcing election monitoring in jurisdictions across the country. The press release does not specify any statutory authority—merely listing statutes that have general connections with voting rights. Now the Department claims that, because a 2021 Americans with Disabilities Act Settlement with the City of St. Louis has expired, there is no reasonable likelihood that this will occur again. The district court agreed. But this was error.

First, this case is the paradigmatic example of one that is capable of repetition but will evade review. The Department of Justice has done the same thing for eleven straight general elections and does so at the last possible moment before the election begins, leaving no time for anything but emergency proceedings. Second, the Department cannot carry its formidable burden to show that the expiration of the settlement agreement will cause it to voluntarily cease its actions. This case is not moot. This Court should reverse.

Appellants request 10 minutes for oral argument.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ........ 2
TABLE OF CONTENTS ........ 3
TABLE OF AUTHORITIES ........ 4
JURISDICTIONAL STATEMENT ........ 6
STATEMENT OF THE ISSUES ........ 7
STATEMENT OF THE CASE ........ 8
SUMMARY OF ARGUMENT ........ 12
ARGUMENT ........ 14
I. Mootness does not automatically require dismissal. ........ 14
II. This case is capable of repetition but will evade review. ........ 17
III. Appellees did not meet their heavy burden to show voluntary cessation. ........ 21
CONCLUSION ........ 27
CERTIFICATE OF COMPLIANCE ........ 28
CERTIFICATE OF SERVICE ........ 28

## TABLE OF AUTHORITIES

### Cases

*Akpovi v. Douglas*, 43 F.4th 832 (8th. Cir. 2022) .................................... 15

*Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224 (D.C. Cir. 2021) ............... 22

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ....................................... 12

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982).............. 14

*Dep't of Com. v. New York*, 588 U.S. 752 (2019)...................................... 16

*Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234 (2024)........ 13, 14, 22

*Fortner v. Eischen*, 170 F.4th 655 (8th Cir. 2026)............................. 13, 16

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........................................................................ 14, 20

*Greenman v. Jessen*, 787 F.3d 882 (8th Cir. 2015).................................... 8

*Hillesheim v. Holiday Sationstores, Inc.*,
903 F.3d 786 (8th Cir. 2018)................................................................. 12

*Iowa Prot. & Advoc. Servs. v. Tanger, Inc.*,
427 F.3d 541 (8th Cir. 2005)................................................................. 13

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)............................................................. 17, 22, 23

*Nat'l Right to Life Pol. Action Comm. v. Connor*,
323 F.3d 684 (8th. Cir. 2003).................................................... 13, 18, 22

*Rinne v. Camden Cnty.*, 65 F.4th 378 (8th Cir. 2023) ............................ 23

*Smith v. Hundley*, 190 F.3d 852 (8th Cir. 1999) ..................................... 13

*St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264 (8th Cir. 2011) ............. 18

*United States v. Concentrated Phosphate Export Ass'n.*, 393 U.S. 199 (1968) ........ 15

*Van Bergen v. Minnesota*, 59 F.3d 1541 (8th Cir. 1995) ........ 13, 17

**Statutes**

5 U.S.C. § 702 ........ 6

5 U.S.C. § 705 ........ 6

28 U.S.C. § 1291 ........ 6

28 U.S.C. § 1294(1) ........ 6

28 U.S.C. § 1331 ........ 6

28 U.S.C. § 1361 ........ 6

28 U.S.C. § 2201 ........ 6

## JURISDICTIONAL STATEMENT

This is an appeal from the final judgment of the U.S. District Court for the Eastern District of Missouri entered on March 31, 2026. App. 194; R. Doc. 34. The district court had subject-matter jurisdiction under 5 U.S.C. §§ 702 and 705 and under 28 U.S.C. §§ 1331, 1361, and 2201. The State of Missouri, Attorney General Catherine Hanaway, and Secretary of State Denny Hoskins timely appealed on April 13, 2026. App. 195-96; R. Doc. 36. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 1294(1).

## STATEMENT OF THE ISSUES

Whether the district court erred in dismissing as moot Plaintiffs' pre-election challenge to the Department of Justice's failure to provide sufficient rationale to send federal-election monitors into Missouri polling places where the controversy is short-lived yet recurrent and the Department has not carried its burden to show voluntary cessation.

- *Federal Bureau of Investigation v. Fikre*, 601 U.S. 234 (2024)
- *National Right to Life Political Action Committee v. Connor*, 323 F.3d 684 (8th. Cir. 2003)
- *Van Bergen v. Minnesota*, 59 F.3d 1541 (8th Cir. 1995)

## STATEMENT OF THE CASE

Four days before the 2024 General Election, the Department of Justice announced its intent to send federal monitors into polling places. App. 19; R. Doc. 1-2 at 1.[1] It did so in a press release, with the City of St. Louis, Missouri being one of the eighty-six jurisdictions targeted with federal intrusion. App. 20; R. Doc. 1-2, at 2. The press release did not cite any specific legal authority for these actions, instead listing federal statutes that generally protect the right to vote. App. 21; R. Doc 1-2 at 3.

This was not the first time the Department engaged in this threatening behavior. It similarly targeted Missouri jurisdictions for monitoring in 2004, 2016, and 2022. App. 127; R. Doc. 22-1 at 3. In 2022, the Missouri Secretary of State objected to the lack of both notice provided by the Department and legal authority of election monitors to enter polling places. App. 30–32; R. Doc. 1-4. Following this objection, the federal personnel in Missouri limited their monitoring to outside of polling places. *See* App. 127; R. Doc. 22-1 at 3 n.3

[1] Because this appeal arises out of a motion to dismiss, the relevant facts are those set out in the complaint, its attached exhibits, and the exhibits attached to Appellees' motion to dismiss and Appellants' opposition. *See Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015).

On the next business day after the Department's 2024 press release, the State of Missouri, its Attorney General, and its Secretary of State (collectively the State) filed this suit. The State alleged violations of the Administrative Procedure Act (APA) based on the press release's lack of specific legal justifications for the Department to send election monitors into Missouri polling places. App. 13–16; R. Doc. 1 at 7–10. The State contemporaneously moved the district court for a temporary restraining order. App. 33–35; R. Doc. 2. The Department opposed the motion, raising for the first time their authority to monitor polling places in St. Louis under a 2021 Americans with Disabilities Act settlement agreement with the St. Louis Board of Elections. App. 37–40; R. Doc. 8 at 2–5. The district court heard arguments over teleconference at 7:45 p.m. on November 4, 2024. App. 4. It then denied the State's motion, finding that the State failed to establish a likelihood of irreparable harm and that the public interest favored immediate relief. App. 113–14; R. Doc. 10 at 3–4.

The 2024 election in St. Louis occurred under federal monitoring. On Election Day, the State noticed its intent to press forward with the litigation given its remaining dispute between state and federal officials

over election monitoring. App. 115–17; R. Doc. 12. In December 2024, before the Department filed a responsive pleading, the Department terminated its settlement agreement with the St. Louis Board of Elections early—it was set to end in July 2025. App. 140–43; R. Doc. 22-2, *see also* App. 45–58; R. Doc. 8-1; App. 99–103; R. Doc. 8-2. On March 4, 2025, the Department moved to dismiss the case. App. 118; R. Doc. 22. It asserted mootness because Election Day had passed and no mootness exceptions applied. App. 132–39; R. Doc. 22-1 at 8–15. The State countered that the case was capable of repetition but will evade review and that the Department could not satisfy the voluntary-cessation exception. App. 170–75; R. Doc. 26 at 3–8.

The district court granted the Department's motion. First, it found that the case was moot because Election Day had passed. App. 190–91; R. Doc. 33 at 4–5. Next, the court concluded that the dispute was not capable of repetition because the 2021 settlement agreement had expired and that the State could have challenged the agreement before the election. App. 191–92; R. Doc. 33 at 5–6. Finally, the court briskly determined that the voluntary cessation exception did not apply because the Department did not voluntarily cease its actions. App. 192–93; R.

Doc. 33 at 6–7. The district court dismissed the case with prejudice. App. 194; R. Doc. 34. On April 13, 2026, the State timely filed its notice of appeal. App. 195–96; R. Doc. 36.

## SUMMARY OF ARGUMENT

The district court's judgment dismissing the case as moot fundamentally misunderstands the State's alleged injury. The complaint alleged that the Department of Justice violated the Administrative Procedures Act by failing to provide the authority and rationale supporting its decision to send election monitors into St. Louis polling places. But the Department convinced the district court that the issue was moot because the legal authorization for their use of election monitors in 2024 had expired at the Department's choosing.

This case is not moot for two reasons. First, this case is capable of repetition but will evade review. The Department of Justice has admitted that it has engaged in the exact conduct the State challenged below in every general election for the past twenty years. And it has not made any indication, much less commitment, that it will not do so in the future. Further, the Department's policy of issuing the notices mere business days before the election stifles any ability for meaningful review.

Second, the Department of Justice has not shown that there is no reasonable expectation that their actions will recur. The only

intervening event cited by the Department is the expiration of a settlement agreement that it did not cite when announcing its planned action. Its expiration therefore has no bearing on whether the Department will comply with the Administrative Procedures Act in the future. In sum, the Department has not met its formidable burden to show that the voluntary cessation exception does not apply here.

This case is not moot. This court should reverse.

## ARGUMENT

The district court erred in dismissing the case as moot when two exceptions to mootness applied. The Department of Justice asked the district court to ignore its continuous conduct over the past twenty years and instead focus only on its settlement agreement with the City of St. Louis. The district court's error resulted from its acceptance of this self-imposed tunnel vision. Properly framed as a challenge to the notice, not the validity of election monitoring itself, this case is clearly not moot because it is capable of repetition while evading review and because it was mooted only by the Department's voluntary cessation. This Court should reverse.

### I. Mootness does not automatically require dismissal.

A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). This occurs "when changed circumstances already provide the requested relief and eliminate the need for court action." *Hillesheim v. Holiday Sationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018) (cleaned up). When this occurs, federal courts—absent an applicable exception—must dismiss the case.

*Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240–41 (2024). In the words of the Supreme Court, "federal judges are not counselors or academics; they are not free to take up hypothetical questions that pique a party's curiosity or their own." *Id.* at 241 (internal quotation omitted).

But even then, there are the exceptions. The first occurs when the dispute is capable of repetition but will evade review. This exception applies "where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Fortner v. Eischen*, 170 F.4th 655, 659 (8th Cir. 2026) (quoting *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999)). Tellingly, "[e]lection issues are 'among those most frequently saved from mootness by this exception.'" *Nat'l Right to Life Pol. Action Comm. v. Connor*, 323 F.3d 684, 691 (8th. Cir. 2003) (quoting *Van Bergen v. Minnesota*, 59 F.3d 1541, 1547 (8th Cir. 1995)). A case will not evade review if plaintiffs "take[] advantage of its procedural options" such as "[w]here prompt application for a stay pending appeal can preserve an issue for appeal." *Iowa Prot. & Advoc. Servs. v. Tanger, Inc.*, 427 F.3d 541, 544 (8th Cir. 2005) (internal quotation omitted).

The second exception applies when the case is moot only because of the defendant's voluntary cessation of the challenged conduct. As the Supreme Court explained, "it is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "If it did, the courts would be compelled to leave the defendant free to return to his old ways." *Aladdin's Castle*, 455 U.S. at 289 n.10 (cleaned up).

To keep a party from dodging an adverse judgment, the party claiming mootness bears a tough burden against a voluntary-cessation claim. *See Friends of the Earth*, 528 U.S. at 189 ("The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." (cleaned up)). And yes—that heavy burden "holds for governmental defendants no less than for private ones." *Fikre*, 601 U.S. at 241. With this in mind, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not

reasonable be expected to recur." *United States v. Concentrated Phosphate Export Ass'n.*, 393 U.S. 199, 203 (1968).

Dismissal for mootness is reviewed de novo. *Akpovi v. Douglas*, 43 F.4th 832, 836 (8th. Cir. 2022).

Both exceptions apply here. First, the Department has admitted its continuous practice of sending poll monitors at the eleventh-hour without specifying any source of authority allowing it to do so. Second, they have not even attempted to show that they will discontinue this practice moving forward. The case is not moot.

## II. This case is capable of repetition but will evade review.

The district court held that the case was neither capable of repetition nor would it evade review. Both holdings were error.

First, the dispute between the State and the Department is likely to recur. By its own admission, "[e]very even numbered year for at least the last 20 years, the Department of Justice has issued a press release laying out its plan to monitor certain jurisdictions during that year's general election." App. 126; R. Doc. 22-1 at 2. In arbitrary fashion, none of the press releases announcing election monitoring contains any specific authority allowing it. *See* App. 126; R. Doc. 22-1 at 2 n.2; *cf. Dep't*

*of Com. v. New York*, 588 U.S. 752, 785 (2019) (holding agency action invalid because, while not substantively invalid, there was no explanation for why the action was taken). This has included monitoring or threatening to monitor elections in the City of St. Louis in 2004, 2016, and 2024 and Cole County in 2022. App. 127; R. Doc. 22-1 at 3. There is a "reasonable expectation" that the Department of Justice will attempt to monitor elections in Missouri in the future without stating the reasons why. *Fortner*, 170 F.4th at 659.

Second, the duration of the challenged conduct is too short to allow for meaningful review. Assuming that the Department issued its press release at 8:00 a.m. eastern time on November 1, it gave the State a mere 108 hours, including the weekend, to litigate its challenge to the planned election monitoring. That is not enough time to litigate an APA challenge—as the district court docket itself shows. Within the span of a single day, the State filed the action, moved for a temporary restraining order, the Department responded to the motion, and the district court denied the motion following an after-hours hearing. App. 4. Ultimately, as often happens with election-related cases, a challenge to an action mere days before an election is categorically incapable of obtaining full

review before it would become moot. *See Van Bergen*, 59 F.3d at 1547 (finding that challenge to election rule "will never be fully litigated if, at each election, the case becomes moot before appeals can be completed").

The district court's contrary reasoning is unpersuasive—mainly because the court focused on an extraneous fact and overlooked the broader problem. Specifically, the court held that the case did not evade review because the State "could have challenged the validity of the 2021 settlement agreement under Missouri law" "[a]t any point" since its inception. App. 191–92; R. Doc. 33 at 5–6. But this fundamentally misunderstands what this case is about. The complaint alleges that the Department's November 2024 press release was arbitrary and capricious because it failed to provide clear statutory authority for its decision to send election monitors to St. Louis. App. 13–16; R. Doc. 1 at ¶¶ 29–47. The existence of a settlement agreement authorizing election monitoring was irrelevant given that the Department did not state its reliance on the agreement when announcing the action. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983) ("We have frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner . . . .").

Even if the settlement agreement were relevant, the district court's conclusion rests on a number of assumptions that do not hold water. First, the court assumed that the State could challenge a federal settlement agreement on state-law grounds. App. 191–92; R. Doc. 33 at 5-6. This Court's precedent holds otherwise. *See St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 271 (8th Cir. 2011) (finding that state law cannot prevent a remedy rooted in federal authority).

Second, the district court assumed that any challenge to the settlement agreement would be ripe unless or until the Department announced plans to send election monitors under its terms. App. 191–92; R. Doc. 33 at 5-6. That position too does not withstand on-point authority. *See Connor*, 323 F.3d at 692 (finding case unripe when "[w]ithout additional factual development, we cannot be sure if there is even a dispute here to resolve"). Here, the State brought an APA claim based on the Department's failure to explain its basis for dispatching monitors to St. Louis. App. 13–16; R. Doc. 1 at ¶¶ 29–47. That claim only ripened with the Department's announcement—and there was not enough time to litigate it before the election.

All told, the district court's erroneous premise that the State could have brought an action challenging the settlement agreement before the Department of Justice's November 1 announcement improperly colored the analysis. In reality, this is another election-related dispute that will evade review. Hence, this Court should conclude that the State's claim is capable of repetition but evasive of review and reverse.

## III. Appellees did not meet their heavy burden to show voluntary cessation.

The district court likewise erred in concluding that Appellees carried their formidable burden of rebutting voluntary cessation. The Department disclaimed any voluntary cessation of its actions, claiming instead that the challenged actions "naturally expired on their own terms." App. 138; R. Doc. 22-1 at 14. But again, this confuses the nature of the State's claims and fails to show that the disputed conduct will not recur in the future.

The district court's terse, one-paragraph rejection of the State's voluntary-cessation charge mischaracterized this case. *See* App. 192–93; R. Doc. 33 at 6–7. Specifically, the district court once again viewed the settlement agreement and its expiration as dispositive. *Id.* But this

dispute is about the Department's failure to provide sufficient bases for its authority to engage in election monitoring. The complaint does not allege that the Department lacks any authority whatsoever to engage in election monitoring. Instead, the State contended that the APA required the Department to explain the bases for its decision, which the press release failed to do. *See* App. 13–16; R. Doc. 1 at ¶¶ 29–47. The expiration of the 2021 settlement agreement therefore has little-to-no relevance here because the Department did not cite it as a basis for its decision to send election monitors to St. Louis. App. 19–23; R. Doc. 1-2.

Quite relevant, however, is the Department's long history of threating deployment of election monitors without adequate explanation. App. 11; R. Doc. 1 at ¶ 22. Given the complaint's allegations respecting this history, the Department has no basis for asserting that its challenged conduct cannot be reasonably expected to recur. *See Friends of the Earth*, 528 U.S. at 190 (describing burden to show voluntary cessation as "formidable"). As it admitted below, in "[e]very even numbered year for at least the last 20 years, the Department of Justice has issued a press release laying out its plan to monitor certain

jurisdictions during that year's general election." App. 126; R. Doc. 22-1 at 2.

Moreover, the Department's prior threats have not necessarily turned on the existence of settlement agreements. Each of the press releases cited by the State merely list jurisdictions and generic citations to statutes that protect voting rights. App. 126 n.2; R. Doc. 22-1 at 2 n.2. Absent are specific provisions authorizing the conduct, descriptions of statutes that apply to given jurisdictions, whether any other authorities allow election monitoring, or why other jurisdictions will not be monitored. App. 126–27; R. Doc. 22-1 at 2-3.

The expiration of the settlement agreement also does not affect whether the Department will comply with the APA in the future. The Department did not cite the settlement as authority when it announced its intent to send election monitors to St. Louis. App. 19–23; R. Doc. 1-2. Nor did the Department engage in election monitoring in St. Louis, as authorized by the settlement agreement, during the 2022 general election. App. 24–29; R. Doc. 1-3. The mere existence of some authority to engage in a practice does not obviate the APA's requirement that it provide a "satisfactory explanation for its action including a rational

connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (cleaned up). The Department's emphasizing the expiration of the 2021 settlement agreement is therefore the reddest of red herrings.

Ultimately, the Department bore the burden of showing that the complained of conduct would not recur—it was not the State's burden to show that conduct would happen again. *Fikre*, 601 U.S. at 243. With no "structural obstacles" to threatening election monitors without adequate explanation, the Department did not meet that burden. *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 n.5 (D.C. Cir. 2021). Rather, the Department's continuous course of action, including Missouri jurisdictions in both of the most recent elections and three of the previous five, creates a strong presumption that the challenged conduct will recur. *Connor*, 323 F.3d at 691–92 (finding that an event affecting elections happening two times in two years was likely to recur).

The district court also found that the challenged conduct would not recur in light of the Department's 2022 accession in Cole County. App. 193; R. Doc. 33 at 7. That does not prove that the Department will refrain

from issuing arbitrary poll-monitoring threats in the future. Indeed, the 2022 situation too strongly suggests the opposite.

The 2022 press release announcing that election monitors would be sent to Cole County did not cite any statutory provisions or other authority authorizing the action. App. 24–29; R. Doc. 1-3. Once again, the Department was required to supply a reasoned basis for its decision, which it did not. *See State Farm*, 463 U.S. at 43. The fact that the Department eventually declined to send the election monitors into the polling places does not change that the dispute began over an arbitrary notice. App. 19–29; R. Doc. 1-3; R. Doc. 1-4. The Department's failure to provide notice is what matters, not that it caved to the Missouri Secretary of State's demand.

This is not the case where "[t]he expiration [of a challenged action] was predetermined"—hence, the Department cannot escape its heavy burden of proof under the voluntary-cessation exception. *See Rinne v. Camden Cnty.*, 65 F.4th 378, 386 (8th Cir. 2023). The Department has not carried its burden of showing that there is no reasonable expectation that its consistent arbitrary actions over twenty years will not recur. The

district court erred in finding the voluntary-cessation exception inapplicable. This Court should reverse.

## CONCLUSION

This Court should reverse the district court's judgment and remand for further proceedings.

Respectfully submitted,

**CATHERINE L. HANAWAY**
Missouri Attorney General

/s/ *William J. Seidleck*
William J. Seidleck #77794MO
*Principal Deputy Solicitor General*
Ryan Dugan #77805MO
Victoria Lowell #76461MO
*Assistant Solicitors General*
Office of the Missouri Attorney General
207 W. High Street
Jefferson City, MO 65101
Phone: (573) 751-8785
William.Seidleck@ago.mo.gov
Ryan.Dugan@ago.mo.gov

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(i) in that it contains 3,633 words excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) in that this document has been prepared in a proportionally spaced typeface using Microsoft Word (size 14 Century Schoolbook font).

/s/ *William J. Seidleck*
William J. Seidleck
*Principal Deputy Solicitor General*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system. Counsel for Appellee will receive a copy of the foregoing document through the CM/ECF system on June 2, 2026.

/s/ *William J. Seidleck*
William J. Seidleck
*Principal Deputy Solicitor General*