**No. 26-1674**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

STATE OF MISSOURI, *et al.*,

*Plaintiffs-Appellants*,

v.

TODD BLANCHE, in his official capacity as Acting Attorney General of the United States, *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Missouri (No. 4:24-cv-01473-SEP)

# BRIEF FOR APPELLEES


BRETT A. SHUMATE
*Assistant Attorney General*

THOMAS C. ALBUS
*United States Attorney*

MICHAEL S. RAAB
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*(202) 514-4819*

## SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

This case presents a challenge under the Administrative Procedure Act to a decision of the U.S. Department of Justice, pursuant to a 2021 settlement agreement, to send election monitors to the City of St. Louis in advance of the November 2024 general election. The district court correctly concluded that the challenge is now moot given that the 2024 election has passed and the relevant settlement agreement has expired. As the court correctly determined, the dispute is not capable of repetition yet evading review and does not fall within the voluntary cessation exception to mootness. Accordingly, the court properly dismissed the case for lack of subject matter jurisdiction.

The government stands ready to present oral argument if the Court believes it would help resolve the questions presented in this case. If the Court calendars the case for argument, the government requests 10 minutes.

## TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF THE ISSUE .......... 1

STATEMENT OF THE CASE .......... 2

A. Statutory Background .......... 2

B. Factual Background .......... 4

C. Prior Proceedings .......... 8

SUMMARY OF ARGUMENT .......... 11

STANDARD OF REVIEW .......... 14

ARGUMENT: THE DISTRICT COURT CORRECTLY DISMISSED MISSOURI'S CLAIM AS MOOT. .......... 14

A. Missouri's Claim is Moot Because the 2024 Election Has Long Since Concluded. .......... 15

B. Neither Mootness Exception Applies. .......... 15

1. Missouri's Challenge Is Not Capable of Repetition Yet Evading Review. .......... 17

2. Missouri Cannot Satisfy the Voluntary Cessation Exception. .......... 26

CONCLUSION .......... 28

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:**

*Abdurrahman v. Dayton*,
903 F.3d 813 (8th Cir. 2018) .......................................................... 14, 18

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ................................................................. 13, 14, 26

*Arkansas AFL-CIO v. FCC*,
11 F.3d 1430 (8th Cir. 1993)................................................................ 16

*Davis v. Federal Election Comm'n*,
554 U.S. 724 (2008) ............................................................................ 25

*Department of Com. v. New York*,
588 U.S. 752 (2019) ............................................................................ 23

*Lujan v. National Wildlife Fed'n*,
497 U.S. 871 (1990) ............................................................................ 17

*McGehee v. Nebraska Dep't of Corr. Servs.*,
987 F.3d 785 (8th Cir. 2021) ............................................... 12, 17-18, 18

*Minnesota Humane Soc'y v. Clark*,
184 F.3d 795 (8th Cir. 1999) ................................................................ 18

*Missouri ex rel. Nixon v. Craig*,
163 F.3d 482 (8th Cir. 1998) ............................................. 15, 20, 22, 23

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ................................................................................ 9

*Murphy v. Hunt*,
455 U. S. 478 (1982)....................................................................... 14-15

*Noem v. Haaland*,
41 F.4th 1013 (8th Cir. 2022) ................................. 1, 13, 16, 17, 22, 23

*Perficient, Inc. v. Munley*,
973 F.3d 914 (8th Cir. 2020) ................................................................ 26

*POET Biorefining – Hudson, LLC v. U.S. EPA*,
971 F.3d 802 (8th Cir. 2020) .................................................................. 16

*Prowse v. Payne*,
984 F.3d 700 (8th Cir. 2021) .................................................................. 15

*Rinne v. Camden County*,
65 F.4th 378 (8th Cir. 2023) ........................................................ 1, 14, 26

*Roberts v. Norris*,
415 F.3d 816 (8th Cir. 2005) .................................................................. 22

*South Dakota v. Hazen*,
914 F.2d 147 (8th Cir. 1990) .................................................................. 15

*Spencer v. Kemna*,
523 U.S. 1 (1998) ................................................................................... 15

*St. Charles Tower, Inc. v. Kurtz*,
643 F.3d 264 (8th Cir. 2011) .................................................................. 19

*Tennessee v. Lane*,
541 U.S. 509 (2004) ............................................................................... 2-3

*Van Bergen v. Minnesota*,
59 F.3d 1541 (8th Cir. 1995) .................................................................. 25

*Weinstein v. Bradford*,
423 U.S. 147 (1975) ........................................................................... 18, 20

*Whitfield v. Thurston*,
3 F.4th 1045 (8th Cir. 2021) ........................................... 1, 18, 21-22, 25

**U.S. Constitution:**

U.S. Const. art. III, § 2, cl. 1 ............................................................ 1, 14

**Statutes:**

Administrative Procedure Act (APA):
5 U.S.C. § 702 .......................................................................................... 1

5 U.S.C. § 704 .......... 17
5 U.S.C. § 705 .......... 1

Americans with Disabilities Act:
42 U.S.C. § 12131 .......... 2
42 U.S.C. § 12132 .......... 2
42 U.S.C. § 12133 .......... 3

Civil Rights Act of 1964:
42 U.S.C. § 2000d .......... 3
42 U.S.C. § 2000d-1 .......... 3

Rehabilitation Act of 1973:
29 U.S.C. § 794a(a)(2) .......... 3

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1361 .......... 1

28 U.S.C. § 2201 .......... 1

Mo. Rev. Stat. § 115.409 .......... 9


**Rules and Regulations:**


28 C.F.R. pt. 35 .......... 2, 4
28 C.F.R. §§ 35.170-.178 .......... 4

28 C.F.R. § 41.5 .......... 3

45 C.F.R. § 80.8 .......... 3

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1361, 2201 and 5 U.S.C. §§ 702, 705. The district court dismissed the case for lack of subject matter jurisdiction on March 31, 2026, on the grounds that the case had become moot. Add.8; App. 194; R. Doc. 34. The plaintiffs filed a timely notice of appeal on April 13, 2026. App. 195; R. Doc. 36. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

The question presented in this appeal is whether Missouri's challenge to the Department of Justice's (Department or DOJ) planned monitoring of polling places in the City of St. Louis during the November 5, 2024 general election is moot given that the election has passed, the settlement agreement that prompted the monitoring is no longer in effect, and there is no reasonable expectation that the same controversy will recur.

The most apposite authorities are: Article 3, Section 2 of the Constitution; *Rinne v. Camden County*, 65 F.4th 378 (8th Cir. 2023); *Noem v. Haaland*, 41 F.4th 1013 (8th Cir. 2022); *Whitfield v. Thurston*, 3 F.4th 1045 (8th Cir. 2021).

## STATEMENT OF THE CASE

### A. Statutory Background

In 2021, the Department of Justice and the Board of Election Commissioners for the City of St. Louis (Board) entered into a settlement agreement following an investigation by the Department into myriad substantiated complaints of violations of the Americans with Disabilities Act (ADA) at polling places in St. Louis. *See* App. 46; R. Doc. 8-1, at 2; *see also* 28 C.F.R. pt. 35.

The ADA protects people with disabilities from discrimination by public entities. *See* 42 U.S.C. § 12132. "Public entity" is defined to include "any State or local government" or "any department, agency, special purpose district, or other instrumentality" of one. *Id.* § 12131. Title II of the ADA specifies that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. This language has been understood to apply to access to voting booths. *See Tennessee v. Lane*, 541 U.S. 509, 530

(2004) (describing Title II's "wide variety of applications," including "voting-booth access").

The Department has authority to investigate and enforce Title II of the ADA. In the ADA, Congress also provided that the "remedies, procedures, and rights set forth" in Section 505 of the Rehabilitation Act, "shall be the remedies, procedures, and rights . . . provide[d] to any person alleging discrimination on the basis of disability in violation of [Title II of the ADA]." 42 U.S.C. § 12133. Section 505 of the Rehabilitation Act adopts the enforcement mechanisms of Title VI of the Civil Rights Act of 1964, which prohibits recipients of federal funds from discriminating against individuals on the basis of race, color, or national origin. *See* 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 2000d. Title VI provides for enforcement by administrative termination of federal funds to a recipient or by "any other means authorized by law." 42 U.S.C. § 2000d-1. The Department has, by regulation, established an administrative complaint and investigation system to implement this provision, *see, e.g.*, 28 C.F.R. § 41.5; 45 C.F.R. § 80.8, and has promulgated similar, coordinated regulations to implement Section 504

of the Rehabilitation Act and Title II of the ADA, *see, e.g.*, 28 C.F.R. §§ 35.170-.178.

### B. Factual Background

As noted above, in January 2021, an investigation by the Department of Justice into numerous "substantiated complaints" that alleged noncompliance with the Title II of the ADA at polling places in the City of St. Louis culminated in a settlement agreement with the Board of Election Commissioners for the City of St. Louis. *See* App. 46; R. Doc. 8-1, at 2; *see also* 28 C.F.R. pt. 35. For example, in April 2019, the Department "surveyed 39 of the Board's 111 polling places" and "observed that all of the 39 polling places surveyed contained at least one or more . . . barrier . . . that rendered the facilities inaccessible to voters with disabilities." App. 46; R. Doc. 8-1, at 2. As part of the settlement, the Board agreed to "take all reasonable and necessary steps to effectuate its obligation to comply with the ADA with respect to its voting program and [the] Agreement." App. 48, R. Doc. 8-1, at 4. And, as relevant here, agreed to "cooperate fully with the United States' efforts to monitor compliance with [the] Agreement, including . . . providing the United States with timely access to polling places

(including on Election Day)." App. 55; R. Doc. 8-1, at 11. The Agreement defines "Election Day" to include "all elections operated by the Board, including primary and general elections." App. 47; R. Doc. 8-1, at 3.

The original Agreement was set to expire on January 11, 2024. App. 55; R. Doc. 8-1, at 11. On October 3, 2023, the Department and the Board signed an addendum to "extend the Agreement by eighteen (18) months . . . through July 11, 2025." App. 100; R. Doc. 8-2, at 2. The addendum extended all the provisions of the Agreement and also expressly noted that "the United States shall have full access to persons, employees, facilities, buildings, polling place locations, programs, services, documents, data, records, materials and things that are necessary to assess the Board's progress and implementation efforts." App. 102; R. Doc. 8-2, at 4. Pursuant to the settlement agreement and addendum, the Department conducted "election-day polling place accessibility inspections on multiple occasions, including during the elections on or about March 7, 2023 and April 2, 2024." App. 107; R. Doc. 8-3, at 4. In October 2024, the Department "advised the

Board that it would be monitoring the November 2024 federal elections pursuant to the Settlement Agreement." *Id.*

On November 1, 2024, the Department announced a nationwide plan to "monitor compliance with federal voting rights laws," including the ADA, "in 86 jurisdictions in 27 states for the Nov. 5 general election." App. 19; R. Doc. 1-2, at 1. In accordance with the 2021 settlement agreement, the City of St. Louis was one of the 86 jurisdictions named in the announcement. *Id.*

As noted in the Department's 2024 announcement, the Department "regularly deploys its staff to monitor for compliance with federal civil rights laws in elections in communities all across the country." App. 19; R. Doc. 1-2, at 1.[1] Jurisdictions subject to election

[1] Over the last 20 years, the Department has sent federal election monitors various jurisdictions as part of its obligation to ensure compliance with various federal voting laws, including the "Voting Rights Act, National Voter Registration Act, Help America Vote Act, Uniformed and Overseas Citizens Absentee Voting Act, and Civil Rights Acts," and to "ensure persons with disabilities have a full and equal opportunity to vote" pursuant to the Americans with Disabilities Act. App. 21; R. Doc. 1-2, at 3. *See also, e.g.*, Press Release, Dep't of Just., *Department of Justice Announces Federal Observers to Monitor General Election in States Across the Country* (Oct. 28, 2004), https://perma.cc/J5XD-N8XC; Press Release, Dep't of Just., *Justice Department Sends Election Observers to 22 States Across the Country in*

*Continued on next page.*

monitoring have ranged in region, type, and size—from Manhattan, New York, to Perry County, Alabama, to Apache, Cochise, and Navajo Counties in Arizona. Prior to this dispute, Missouri jurisdictions have only appeared a few times: St. Louis in 2004 (pursuant to a consent decree entered by the U.S. District Court for the Eastern District of Missouri) and in 2016, and Cole County in 2022 (pursuant to a federal

---

*Unprecedented Monitoring Effort for a Midterm Election* (Nov. 6, 2006), https://perma.cc/J5F2-NP9Q; *see also* Press Release, Dep't of Just., *Department of Justice to Monitor Polls in 23 States Across the Nation on Election Day* (Oct. 30, 2008), https://perma.cc/6P7C-T4ZW; Press Release, Dep't of Just., *Justice Department to Monitor Polls in 18 States on Election Day* (Oct. 29, 2010), https://perma.cc/HYF9-7YT3; Press Release, Dep't of Just., *Justice Department to Monitor Polls in 23 States on Election Day* (Nov. 2, 2012), https://perma.cc/X9RA-BSG3; Press Release, Dep't of Just., *Justice Department Announces On-the-Ground Monitoring at Polling Places in 18 States on Election Day* (Nov. 3, 2014), https://perma.cc/D9AA-EZPJ; Press Release, Dep't of Just., *Justice Department to Monitor Polls in 28 States on Election Day* (Nov. 7, 2016), https://perma.cc/F6WY-ZF9T; Press Release, Dep't of Just., *Justice Department to Monitor Compliance with Federal Voting Rights Laws on Election Day* (Nov. 5, 2018), https://perma.cc/XM5Z-ZG8Z; Press Release, Dep't of Just., *Justice Department Again to Monitor Compliance with the Federal Voting Rights Laws on Election Day* (Nov. 2, 2020), https://perma.cc/4VQH-6ZE6; Press Release, Dep't of Just., *Justice Department to Monitor Polls in 24 States for Compliance with Federal Voting Rights Laws* (Nov. 7, 2022), https://perma.cc/6DLA-X6DY; Press Release, Dep't of Just., *Justice Department to Monitor Polls in 27 States for Compliance with Federal Voting Rights Laws* (Nov. 1, 2024), https://perma.cc/X7CH-TLS6.

investigation into ADA compliance). App. 141; R. Doc. 22-2, at 1; App. 145; R. Doc. 22-3. The planned monitoring inside polling places in Cole County was ultimately converted into exterior monitoring only after Missouri objected. App. 11; R. Doc. 1, at 5, ¶¶ 23-24; *see also* App. 30-32; R. Doc. 1-4 (2022 Letter from Missouri Secretary of State to U.S. Attorney General); App. 142; R. Doc. 22-2, at 3 (noting that 2022 federal election monitors remained outside polling places in 2022).

In December 2024, based on information gathered in November 2024, the Department made a determination of "durable compliance" and terminated the settlement agreement with the Board. App. 142; R. Doc. 22-2, at 3 (Johnson Declaration); *see also* App. 55; R. Doc. 8-1, at 11 (providing for early or partial termination if "the United States determines that the Board has demonstrated durable compliance with Title II of the ADA and this Agreement"). Notwithstanding this early termination, the agreement would have expired in 2025 by its own force. App. 100; R. Doc. 8-2, at 2.

### C. Prior Proceedings

Following the November 2024 announcement, the State of Missouri filed suit in the U.S. District Court for the Eastern District of

Missouri. App. 13-16; R. Doc. 1, at 7-10. The State raised two claims under the Administrative Procedure Act (APA). First, Missouri argued that "DOJ has not identified a statutory authority under which any of the actions set to take place would be authorized," and that "generic reference to federal voting laws that DOJ can enforce in litigation proceedings" is not sufficient to admit federal officials into polling places. *See* App. 13-14; R. Doc. 1, at 7-8. Second, the State argued that the Department had failed to "articulate a 'satisfactory explanation for its action including a rational connection between the facts found and the choices made.'" App. 15; R. Doc. 1, at 9 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The State also sought a temporary restraining order to bar federal election monitors from entering any Missouri polling places, asserting that a state statute—Mo. Rev. Stat. § 115.409—"permits only certain categories of persons to be present in voting locations," not including "the federal officials" identified in the announcement, App. 12; R. Doc. 1, at 6. In its response, the Department explained, relying on a declaration from the Director of Operational Management in the Civil

Rights Division of the Department of Justice, that "the planned monitoring is pursuant to a Settlement Agreement between the United States and the St. Louis Board of Election Commissioners under Title II of the Americans with Disabilities Act," which preempts any state statute to the contrary. App. 36; R. Doc. 8, at 1; *see also* App. 105-07; R. Doc. 8-3, at 2-4 (Buchko Declaration). The Department explained that because the Settlement Agreement was executed pursuant to Title II of the ADA, which explicitly contemplates such voluntary agreements as its enforcement mechanism, any contrary state statute was preempted. App. 38-40; R. Doc. 8, at 3-5. The district court denied the request for a temporary restraining order, concluding the State had not demonstrated irreparable harm or that the balance of the equities favored relief. App. 113-14; R. Doc. 10, at 3-4. The November 2024 monitoring then went ahead as scheduled. *See* App. 142; R. Doc. 22-2, at 3.

In March 2025, the Department moved to dismiss the suit as moot. The district court granted that motion, holding that the "date of the election has long passed and there is no act [the] Court could take to resolve the particular controversy that gave rise to the Complaint."

Add. 4-5; App. 190-91; R. Doc. 33, at 4-5. The court rejected Missouri's arguments that the case should remain live because the issues were capable of repetition yet evading review, explaining that the State had failed to establish a reasonable expectation that they would be subject to the same action again. Because the Department's "only stated reason for including St. Louis in the 2024 Press Release was the settlement agreement," which has terminated, the court determined that "there is no existing reason to fear repetition of the events alleged in the Complaint." Add. 6-7; App. 192-93; R. Doc. 33, at 6-7.

The district court also rejected Missouri's invocation of the voluntary cessation exception to mootness, noting that while the Agreement was terminated early by the Department, it was set to expire prior to the next national election by its own terms. Add. 6; App. 192; R. Doc. 33, at 6. This appeal followed.

## SUMMARY OF ARGUMENT

The district court correctly dismissed this case as moot. Missouri brought this suit specifically to challenge what it perceived as deficiencies in the Department's explanation that it planned to monitor polling places during the November 5, 2024 general election. That

election has passed, the Department's monitoring occurred as planned, and the only asserted basis for the monitoring in Missouri—the 2021 Settlement Agreement between the United States and the St. Louis Board of Election Commissioners under Title II of the ADA—is no longer operative. There is no relief the Court could grant here that would resolve the controversy that gave rise to the complaint.

The district court also rightly concluded that Missouri cannot avoid dismissal for mootness by relying on either of the primary exceptions: the case is not capable of repetition yet evading review, and it does not fall under the voluntary cessation doctrine. This Court has made clear that the exception to mootness for cases that are capable of repetition, yet evading review is "extraordinary and narrow." *See McGehee v. Nebraska Dep't of Corr. Servs.*, 987 F.3d 785, 788 (8th Cir. 2021) (quotation marks omitted). The court was correct that Missouri should have known about the possibility of federal election monitoring pursuant to the settlement agreement as early as 2021 and would have had three years to challenge it. But even assuming the nature of the dispute is too short to fully litigate prior to mootness, this Court should

uphold the dismissal because Missouri cannot satisfy the second prong of the analysis.

Missouri must show that there is a reasonable expectation it will be subject to the same action again, which it cannot do. Because the Department's "only stated reason for including St. Louis in the 2024 Press Release was the settlement agreement," which has terminated, the court rightly found that "there is no existing reason to fear repetition of the events alleged in the Complaint." Add. 6; App. 192; R. Doc. 33, at 6. Election monitoring elsewhere, or monitoring under different statutes, agreements, factual records, or agency explanations, would not be the same controversy. *See Noem v. Haaland*, 41 F.4th 1013, 1017 (8th Cir. 2022). That is especially true for Missouri's APA theory, which turns on the agency's contemporaneous explanation and the administrative record before it.

Finally, the voluntary-cessation exception is also inapplicable. The exception exists to prevent a defendant from voluntarily ending challenged conduct once litigation is initiated and then resuming the same conduct after the case is dismissed. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). It does not apply when the challenged conduct

expires on its own terms or ceases for reasons unrelated to the litigation. *See, e.g.*, *Rinne v. Camden County*, 65 F.4th 378, 386 (8th Cir. 2023). Missouri has pointed to no voluntary action on the part of the Department that would render this doctrine applicable.

## STANDARD OF REVIEW

This Court reviews de novo whether a plaintiff's APA claim is moot. *See Abdurrahman v. Dayton*, 903 F.3d 813, 816 (8th Cir. 2018).

## ARGUMENT

### THE DISTRICT COURT CORRECTLY DISMISSED MISSOURI'S CLAIM AS MOOT.

The Constitution limits the jurisdiction of federal courts to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To "qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" Add. 3; App. 189; R. Doc. 33, at 3 (quoting *Abdurrahman v. Dayton*, 903 F.3d 813, 817 (8th Cir. 2018)). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U. S.

478, 481 (1982) (per curiam)). Mootness "however it may have come about, simply deprives [the court] of [its] power to act; there is nothing for [it] to remedy." Add. 3; App. 189; R. Doc. 33, at 3 (alterations in original) (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998)). In such circumstances, the court "must refrain from reaching the merits because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 484 (8th Cir. 1998) (quoting *South Dakota v. Hazen*, 914 F.2d 147, 150 (8th Cir. 1990)).

### A. Missouri's Claim Is Moot Because the 2024 Election Has Long Since Concluded.

The district court correctly concluded that Missouri's suit is moot because there is no longer a live controversy over the Department's decision to send election monitors to supervise compliance with the ADA and the settlement agreement at polling places in the City of St. Louis for the November 2024 general election, which has long since passed. *See* Add. 4; App. 190; R. Doc. 33, at 4. "In determining whether there is an ongoing controversy, the Court looks to the complaint." *Id.* (citing *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021)). The State's complaint specifically sought to enjoin and/or vacate the "actions

outlined in the press release," App. 15-16; R. Doc. 1, at 9-10, namely "plans to monitor compliance with federal voting rights laws in 86 jurisdictions in 27 states for the Nov. 5[, 2024,] general election," App. 19; R. Doc. 1-2, at 1. The "date of the election has long passed," and the monitoring has already occurred as planned. Add. 4-5; App. 190-91; R. Doc. 33, at 4-5 (citing *Arkansas AFL-CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc)). There is thus "no act [the] Court could take to resolve the particular controversy that gave rise to the Complaint." Add. 5; App. 191; R. Doc. 33, at 5. As this Court recognized in *Noem v. Haaland*, "to now order the [Department] to reconsider its decision . . . for an event more than a year in the past would be the very definition of '[in]effectual relief.'" 41 F.4th 1013, 1016 (8th Cir. 2022) (third alteration in original) (quoting *POET Biorefining – Hudson, LLC v. U.S. EPA*, 971 F.3d 802, 805 (8th Cir. 2020) (per curiam)).

Nor is the controversy live because there will be another upcoming election cycle at which federal monitors could be present. The State did not raise general claims about election monitoring; it raised claims under the APA that the Department had not sufficiently explained or justified the decision to send election monitors to polling places in

Missouri during the November 2024 general federal election. *See* App. 15; R. Doc. 1, at 9. The APA permits challenges to "final agency action," 5 U.S.C. § 704, and a plaintiff must target a "particular agency action that causes it harm," *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (quotation marks omitted). All Missouri's requested relief was aimed at vacating the Department's explanation or enjoining the Department from monitoring the 2024 election. *See* App. 16; R. Doc. 1, at 10. As this Court recognized in *Noem v. Haaland*, "nothing [the court] can say today can turn back the clock to 202[4]." 41 F.4th at 1016.

**B. Neither Mootness Exception Applies.**

The State seeks to keep this case alive by pointing (Br. 17, 21) to two exceptions to the basic rule that where a case is moot, it should be dismissed: where the issues are "capable of repetition, yet evading review" and the "voluntary cessation" doctrine. Neither applies here.

**1. Missouri's Challenge Is Not Capable of Repetition Yet Evading Review.**

A case that is otherwise moot may be saved from dismissal where the issues are capable of repetition, yet evading review. "This exception is 'extraordinary and narrow.'" *McGehee v. Nebraska Dep't of Corr.*

*Servs.*, 987 F.3d 785, 788 (8th Cir. 2021) (quoting *Minnesota Humane Soc'y v. Clark*, 184 F.3d 795, 797 (8th Cir. 1999)). As the party invoking the exception, the State bears the burden of demonstrating that it applies. *See Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) (citing *Abdurrahman*, 903 F.3d at 817).

A case may be capable of repetition yet evading review where "(1) the challenged action is of too short a duration to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *McGehee*, 987 F.3d at 788-89 (quotation marks omitted); *see also Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam).

Missouri contends that this suit should not be dismissed because the Department has announced plans to send federal election monitors to various jurisdictions around the country every election cycle for the last 20 years without sufficient notice to litigate a challenge prior to the election. Br. 17-18. As an initial matter, that argument is premised on an understanding of the controversy that is far too general. The State brought an APA challenge to the Department's 2024 decision to send election monitors to Missouri to observe compliance with a settlement

agreement, which had been in place since 2021. The district court reasonably noted that Missouri could have challenged the Board's ability to enter into that agreement at any point in the preceding three years. Add. 6; App. 192; R. Doc. 33, at 6. As the court stressed, "the conduct objected to in the Complaint—i.e., election monitoring in November 2024—was based on [the] agreement, which had been in effect for nearly three years before the 2024 press release." Add. 5-6; App. 191-92; R. Doc. 33, at 5-6 (citations omitted). The State should have known about the likelihood that the Department would send federal election monitors pursuant to the settlement agreement, particularly since the Department previously sent federal inspectors to polling places in St. Louis in March 2023 and April 2024, *see* App. 107; R. Doc. 8-3, at 4. To the extent any challenge would be cognizable, Missouri could have brought it before November 2024.[2]

[2] Missouri suggests that this Court has held that a State could not challenge a settlement agreement on state-law grounds. *See* Br. 20 (citing *St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 271 (8th Cir. 2011)). *St. Charles Tower*, however, supports the opposite conclusion: this Court addressed on the merits whether a consent decree that violated state law was nonetheless necessary to remedy a violation of federal law, and concluded that it was not. *See* 643 F.3d at 272.

Even assuming, however, the time to challenge the Department's explanation for sending election monitors is too short to be fully litigated before an election, the district court rightly concluded that Missouri cannot satisfy the second prong of the analysis. It is not enough that plaintiffs "may be parties to the same sort of dispute in the future." *Craig*, 163 F.3d at 485 (alteration and quotation marks omitted). Instead, there must be a "reasonable expectation" that plaintiffs will be "subjected to *the same action* again." *Weinstein*, 423 U.S. at 149 (emphasis added).

The district court was correct that Missouri has not "demonstrated a reasonable expectation that they will be subjected to the same [election monitoring] again." Add. 6; App. 192; R. Doc. 33, at 6. The record here makes clear that the Department's only asserted basis for monitoring polling places in St. Louis on November 5, 2024, was the settlement agreement with the St. Louis Board of Election Commissioners. *See* App. 105-06; R. Doc. 8-3, at 2-3 (Buchko Declaration) ("For the State of Missouri, only the jurisdiction of the City of St. Louis is on the list. The Disability Rights Section of the Civil Rights Division will be monitoring tomorrow's election in St. Louis

pursuant to a settlement agreement with the St. Louis Board of Election Commissioners . . . under Title II of the ADA. . . ."). Because the Department's "only stated reason for including St. Louis in the 2024 Press Release was the settlement agreement," which has terminated, the court correctly determined that "there is no existing reason to fear repetition of the events alleged in the Complaint." Add. 6; App. 192; R. Doc. 33, at 6.

As noted above, the agreement arose from substantiated complaints under the ADA that "rendered the [voting] facilities inaccessible to voters with disabilities." *See* App. 46; R. Doc. 8-1, at 2. The agreement provided in relevant part that the Board would allow "[t]he United States [to] review compliance with this Agreement at any time" including "providing the United States with timely access to polling places (including on Election Day)." App. 55; R. Doc. 8-1, at 11. The Department terminated the settlement agreement due to durable compliance on the part of the Board in January 2025, App. 142; R. Doc. 22-2, at 3, and notwithstanding the early termination, the agreement would have expired of its own force in July 2025. Absent the settlement agreement, there is no "reasonable expectation," *Whitfield*, 3 F.4th at

1047 (quotation marks omitted), that Missouri jurisdictions will again be subject to election monitoring with an eye towards ADA compliance in 2026 or future elections. Where "the likelihood of repetition is only speculative" the exception cannot be satisfied. *Roberts v. Norris*, 415 F.3d 816, 819 (8th Cir. 2005).

Nor is it enough for Missouri to allege that it *might* be subject to federal election monitoring more generally. Even if Missouri could show that it was more than just speculation that it would be subject to monitoring in 2026, because the settlement agreement expired, any future election monitoring would present a different controversy than the one here. South Dakota made a similar argument in *Noem v. Haaland*, where it argued that its challenge to the denial of a fireworks permit by the Department of the Interior was capable of repetition because it expected to seek similar permits in the future. *See* 41 F.4th at 1016-17. This Court reasoned that although "South Dakota ha[d] established a 'reasonable expectation' that it will regularly apply for a fireworks permit," the reasons for denial were "likely to be different each time." *Id.* (citing *Craig*, 163 F.3d at 485). "In arbitrary-and-capricious review, even small factual differences can matter." *Id.* at

1017. Missouri's APA theory, if reviewable, requires "evaluat[ing] the 'contemporaneous explanation in light of the existing administrative record.'" *Id.* (emphasis omitted) (quoting *Department of Com. v. New York*, 588 U.S. 752, 780 (2019)) (alterations in original)). In *Noem v. Haaland*, the challenged denial was based on the "then-current state of COVID-19, an ongoing construction project, tribal opposition[,] . . . and fire and water-contamination risks" supporting the denial. *Id.* Because in the future, a fireworks permit could be denied for "some combination of [those] reasons, or none of them at all," *id.*, this Court determined that South Dakota failed to establish a reasonable expectation that the *same controversy* would recur even if a similar dispute could arise in the future. *See id.* (citing *Craig*, 163 F.3d at 485).

So too here. Jurisdictions in Missouri have only been selected for monitoring infrequently over the last 20 years. And beyond the 2024 election, there is no evidence that the Department has ever otherwise monitored a Missouri election over the State's or local election board's objection. St. Louis was previously subject to monitoring in 2004 pursuant to a consent decree entered by the U.S. District Court for the Eastern District of Missouri. *See* App. 145-67; R. Doc. 22-3; App. 160;

R. Doc. 22-3, at 17 ("The Board of Elections shall permit attorneys from the United States Department of Justice . . . to monitor voting procedures inside polling places . . . during elections in the City of St. Louis."). St. Louis was again listed in 2016, and Cole County was included in the 2022 announcement, but the Department significantly limited the planned monitoring (to observe outside of polling places only) upon the Secretary of State's objection. *See* App. 11; R. Doc. 1, at 5 ¶¶ 23-24; *see also* App. 30-32; R. Doc. 1-4 (2022 Letter from Missouri Secretary of State to U.S. Attorney General).

In sum, between 2004 and 2022, a jurisdiction in Missouri was slated for monitoring just three times—one of those times was pursuant to a judicial order and another time the Department complied with Missouri's objection and did not go inside the polling places. The district court was correct that any future monitoring in Missouri would potentially arise in a different jurisdiction, rely on different statutory authority, and present a different factual and administrative record. For the same reason, monitoring in other States is irrelevant to the inquiry—the reasoning may differ substantially depending on that

jurisdiction's state of affairs and the federal government's asserted basis to monitor.

Finally, this Court has rejected any argument that election-related challenges are subject to a more relaxed standard, particularly with respect to the second prong of the doctrinal analysis. *See Whitfield*, 3 F.4th at 1047-48 (rejecting argument that "election cases are 'different'" and affirming the same-controversy analysis applies). This Court has noted that election disputes frequently satisfy the first prong of the analysis, but, as explained in *Whitfield*, both this Court and the Supreme Court have required parties to satisfy both prongs, even in election cases. *See id.*; *see also Davis v. Federal Election Comm'n*, 554 U.S. 724, 735-36 (2008). The State's reliance (Br. 15, 17) on *Van Bergen v. Minnesota*, 59 F.3d 1541, 1547 (8th Cir. 1995), in unavailing. There, this Court held that "there is a reasonable expectation that Van Bergen's activities . . . will be limited by the Minnesota statute in the future." *Id.* Missouri cannot show it is reasonably foreseeable it will be subject to the same controversy again, and thus, this case is not capable of repetition yet evading review.

### 2. Missouri Cannot Satisfy the Voluntary Cessation Exception.

The district court also correctly concluded that the voluntary cessation doctrine did not apply to preclude dismissal on mootness grounds here. Courts have held that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already*, 568 U.S. at 91; *see also Rinne v. Camden County*, 65 F.4th 378, 386 (8th Cir. 2023). The principle, known as the voluntary cessation doctrine, requires some voluntary action on the part of the defendant to moot the case. As the district court here recognized, relying on *Rinne*, when "[t]he expiration [of a challenged action] was predetermined . . . the voluntary cessation exception to mootness . . . does not apply." Add. 6; App. 192; R. Doc. 33, at 6 (alterations in original) (quoting *Rinne*, 65 F.4th at 386). Here, the decision to send election monitors to Missouri during the 2024 election has expired because the monitoring happened and the election passed. "This is not a case of voluntary cessation of illegal conduct by the [defendant]." *Perficient, Inc. v. Munley*, 973 F.3d 914, 916 (8th Cir. 2020). Missouri has pointed to no voluntary action on the part of the Department that rendered the case moot.

Indeed, the State has disclaimed any reliance on the Department's decision to terminate the settlement agreement for durable compliance. *See* Br. 23. That is the only possible action by the defendant that might have been relevant to a claim of voluntary cessation, but, as the district court recognized, because the settlement agreement "would have expired before the next national election by its own terms," it cannot support the application of the voluntary cessation doctrine to prevent dismissal for mootness. Add. 7; App. 193; R. Doc. 33, at 7. Nor does the fact that Missouri ultimately declined to send election monitors in 2022 following objection from the State. The challenged action in this case is the 2024 decision to send federal election monitors, which the Department carried out at an election that has since passed.

Missouri also suggests that the district court should have declined to dismiss the case because the Department has engaged in a "continuous course of action" with respect to election monitoring, Br. 24, but that misconceives of the voluntary cessation doctrine. Absent a voluntary action to moot the case on the part of the defendant, which Missouri cannot show here, "the voluntary cessation exception does not apply." Add. 7; App. 193; R. Doc. 33, at 7.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

THOMAS C. ALBUS
*United States Attorney*

MICHAEL S. RAAB
*s/ Laura E. Myron*
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*
*Laura.e.myron@usdoj.gov*

July 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,201 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses, and the brief is virus free.

*s/Laura E. Myron*
Laura E. Myron

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/Laura E. Myron*
Laura E. Myron