No. 26-1674

# In the United States Court of Appeals
## For the Eighth Circuit

The State of Missouri, et al.,

*Plaintiffs-Appellants*,

v.

Todd Blanche, in his official capacity as the Attorney General of the United States of America, et al.,

*Defendants-Appellees*.

---

Appeal from the U.S. District Court for the Eastern District of Missouri
Case No. 4:24-cv-01473-SEP

---

**APPELLANTS' REPLY BRIEF**

---


**CATHERINE L. HANAWAY**
Missouri Attorney General

LOUIS J. CAPOZZI, III
Missouri Solicitor General

William J. Seidleck #77794MO
*Principal Deputy Solicitor General*
Ryan Dugan #77805MO
Victoria Lowell #76461MO
*Assistant Solicitors General*
*Counsel for Appellants*

815 Olive Street, Suite 200
St. Louis, MO 63101
William.Seidleck@ago.mo.gov
Ryan.Dugan@ago.mo.gov
Victoria.Lowell@ago.mo.gov
Tel. (573) 301-5359

## TABLE OF CONTENTS

TABLE OF CONTENTS .......... i
TABLE OF AUTHORITIES .......... ii
INTRODUCTION .......... 1
ARGUMENT .......... 3
I. The Department's arguments against this dispute being capable of repetition while evading review fail. .......... 4
A. Missouri alleged repeated actions, which the Department can continue inflicting. .......... 4
B. This matter will evade review. .......... 9
II. The Department has not carried its burden regarding voluntary cessation. .......... 11
CONCLUSION .......... 16
CERTIFICATE OF COMPLIANCE .......... 17
CERTIFICATE OF SERVICE .......... 17

## TABLE OF AUTHORITIES

Cases Page(s)

*Alaska v. United States Department of Agriculture*,
17 F.4th 1224 (D.C. Cir. 2021)....................5, 9, 13

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013)....................12

*Center for Biological Diversity, Inc. v. BP America Production Co.*,
704 F.3d 413 (5th Cir. 2013)....................7

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982)....................13

*Department of Commerce v. New York*,
588 U.S. 752 (2019)....................14

*Doris Behr 2012 Irrevocable Tr. v. Johnson & Johnson*,
No. 22-1657, 2023 WL 3316329 (3d Cir. May 9, 2023)....................13

*Doron Precision Systems, Inc. v. FAAC, Inc.*,
423 F. Supp. 2d 173 (S.D.N.Y. 2006)....................7

*FBI v. Fikre*,
601 U.S. 234 (2024)....................12, 13

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000)....................11

*Lotus Vaping Techs., LLC v. U.S. FDA*,
73 F.4th 657 (9th Cir. 2023)....................7

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*,
463 U.S. 29 (1983)....................10

*National Right to Life Political Action Committee v. Connor*,
323 F.3d 684 (8th Cir. 2003)....................1, 5, 8

*Noem v. Haaland*,
41 F.4th 1013 (8th Cir. 2022)....................6

*Rinne v. Camden County*,
65 F.4th 378 (8th Cir. 2023)....................7

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) .......... 10, 12

*Whitfield v. Thurston*,
3 F.4th 1045 (8th Cir. 2021) .......... 8

Statutes

5 U.S.C. § 706(2)(A), (C)–(D) .......... 4

Other Authorities

Henry J. F*riendly, "Some Kind* of Hearing," 123 Univ. Pa. L. Rev. 1267 (1975) .......... 4

## INTRODUCTION

The Department of Justice still misunderstands this case—and hence misses the point as to why it's not moot. For starters, this is a textbook case for being capable of repetition but evading review. This Court has squarely held that an election dispute occurring twice in as many years satisfies the requirement that the dispute be capable of repetition. *See Nat'l Right to Life Pol. Action Comm. v. Connor*, 323 F.3d 684, 691–92 (8th Cir. 2003). Further, the Department has engaged in the disputed conduct in three of the last five general elections—including *before* the 2021 settlement agreement whose termination the Department says moots this case. *See* Appellees' Br. 7–8, 21. So this case is capable of repetition.

The dispute will also evade review. The Department continues to peddle the same misleading arguments as below—namely, that the State should have challenged the settlement agreement before the 2024 election. Appellees' Br. 19. But the State's focus was not the settlement agreement. Rather, the State brought claims under the Administrative Procedure Act challenging the sufficiency of the November 1, 2024 press release. App. 13–16; R. Doc. 1 at 7–10. This action *could not* have been

brought before that date save powers of divination or time travel. As is the Department's practice, this occurred within days of the election in question. App. 10–11; R. Doc. 1 at 4–5. Even with the benefit of expedited briefing and argument, it is nearly impossible for a court to decide even emergency motions on that compressed of a timeline. *See* App. 4 (emergency argument held night before election). And now, the Department claims that there is nothing the Court can do because the election has passed. Appellees' Br. 24–25. This case will evade review.

Finally, the Department argues that the State cannot identify a "voluntary action" that mooted the case. Appellees' Br. 26–27. But the Department cannot have its cake and eat it too. The Department has disclaimed any legal authority to engage in election monitoring in Missouri, effectively conceding that their 2022 monitoring in Cole County was unlawful. *See* Appellees' Br., 20–21. But the Department has not disclaimed its authority to send election monitors with scant justification in a way that would assure no future violations. Indeed, the Department continues to send election monitors throughout the country on the same scant justifications. Thus, the Department cannot establish true cessation.

One fact has been made absolutely clear through this litigation: The Department believes it has ironclad (unreviewable) discretion to send election monitors. It did so in St. Louis in 2016 and Cole County in 2022, where it admitted to having no settlement agreements giving *carte blanche* permission. *See* Appellees' Br. 7–8. The expiration of the 2021 settlement agreement with the City of St. Louis will not stop the Department from doing so again—without sufficient explanation. Absent a binding judgment, nothing will prevent the Department from arbitrarily announcing and sending poll monitors in future elections.

In short, this case is not moot. This Court should reverse.

## ARGUMENT

The Department's arguments for mootness still fall flat. It hangs its hat on the expiration of the 2021 settlement agreement between the Department and the St. Louis Board of Elections after the 2024 election. *See* Appellees' Br. 7–8, 21. But the agreement's expiration doesn't matter. The Department did not rely on a settlement agreement in 2016 or 2022 when it sent election monitors into Missouri. And nothing in their responding brief disclaims the Department's doing so in the future.

Hence, this case remains about the Department's belief that it has unfettered discretion to send election monitors anywhere without abiding by a foundational requirement of the Administrative Procedure Act: fair notice and explanation for the agency's action. *See* 5 U.S.C. § 706(2)(A), (C)–(D); *see also* Henry J. Friendly, *"Some Kind of Hearing*,*"* 123 Univ. Pa. L. Rev. 1267, 1280 (1975) ("It is likewise fundamental that notice be given and that it be timely and clearly inform the individual of the proposed action and the grounds for it."). That remains a live dispute.

## I. The Department's arguments against this dispute being capable of repetition while evading review fail.

### A. Missouri alleged repeated actions, which the Department can continue inflicting.

This case is capable of repetition and will evade review absent a final judgment. The Department focuses primarily on the question of repetition, saying that it has sent election monitors to Missouri polling places "just three times" "between 2004 and 2022." Appellees' Br. 24. While this is factually accurate, it is a misleading framing. The Department sent election monitors to Missouri, all in ways that violated the Administrative Procedure Act, in 2004, 2016, and 2022 before it did so again in 2024. Appellees' Br., 7–8. The 2024 election was therefore

the third time in five elections and the second election in a row in which the challenged conduct occurred. This is more than sufficient to satisfy the "capable of repetition" prong. *See Nat'l Right to Life Pol. Action Comm. v. Connor*, 323 F.3d 684, 691–92 (8th Cir. 2003) (holding that an unlikely election event occurring twice "in as many years" was sufficient to invoke exception).

The Department's arguments against repetition fail on another, more fundamental, level—the Department views itself as the sole decider of whether election monitoring occurs and how it is announced. When the Department sent election monitors to Cole County in 2022, there was no settlement agreement or similar authority allowing their use. *See* Appellees' Br. 7–8 (investigation into ADA compliance). Similarly, the Department did not send election monitors to St. Louis in 2022 despite having a settlement agreement authorizing it to do so. *See* App. 24–29; R. Doc. 1-3. There is no evident rhyme or reason behind when and why the Department sends election monitors to any jurisdiction. With only "minimal hurdles to" sending monitors with little-to-no explanation, the Department lacks a basis for claiming that Missouri's complained of

activity is unlikely to repeat itself. *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 n.5 (D.C. Cir. 2021).

This case is distinguishable from *Noem v. Haaland*. There, this Court found a case moot because, even if South Dakota applied for a fireworks permit in the future, the circumstances of the case would be different each time. *Noem v. Haaland*, 41 F.4th 1013, 1016–17 (8th Cir. 2022). Not so here. The Department has repeatedly announced its intent to send election monitors immediately before an election, on vague claims of ensuring compliance with federal law, and citing no specific authority for sending monitors to Missouri. This pattern itself is the problem and it's precisely what Missouri asserts as unlawful. Hence, there's no claim dependent upon a specific administrative record—as was true in *Noem*. *See id.* at 1017. Indeed, Missouri sued precisely because the Department is not creating an administrative record and then justifying its actions in light of that record. *See* App. 13–17; R. Doc. 1 at 7–11. The Department offers no reason to believe that it will cease following this exact pattern

in the future.[1] The Department's efforts to analogize the claims over its pattern of practice to cases turning on administrative records therefore falls flat.

The same goes for other cases relied on by the Department. *Rinne v. Camden County* rejected an argument that a claim was capable of repetition and would evade review because "any future controversy concerning a similar one-year ban need not evade review if the aggrieved party seeks expedited review." 65 F.4th 378, 386 (8th Cir. 2023). Here,

---

[1] Indeed, within this month, the Department has done the exact same thing to other jurisdictions. *See* Justice Department Announces Monitoring of Polling Sites in Four Michigan Cities, U.S. Dep't of Justice (Aug. 4, 2026), https://www.justice.gov/opa/pr/justice-department-announces-monitoring-polling-sites-four-michigan-cities; Justice Department to Conduct Election Monitoring in Minnesota Primary Election, U.S. Dep't of Justice (Aug. 11, 2026), https://www.justice.gov/opa/pr/justice-department-conduct-election-monitoring-minnesota-primary-election; *see also Lotus Vaping Techs., LLC v. U.S. FDA*, 73 F.4th 657, 677 (9th Cir. 2023) (explaining that a court can take judicial notice of press releases); *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 424 (5th Cir. 2013) (recognizing that a court can use matters subject to judicial notice to determine questions of mootness); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (explaining that "a court may take judicial notice of information publicly announced on a party's website"). These press releases are near carbon copies of the ones released for the past two decades. *See* Appellees' Br. 6–7 n.1. This has been and will continue to be the same dispute until the Department changes its ways (or is ordered to do so by a court).

the mere days to litigate provided no opportunity for full review even on an expedited basis. *See* Appellants' Br. 9. Again, as this Court has recognized, "[e]lection issues are 'among those most frequently saved from mootness by this exception.'" *Nat'l Right to Life*, 323 F.3d at 691 (citation omitted).

*Whitfield v. Thurston* also offers the Department no help. That case involved an Independent candidate suing over his exclusion from a general-election ballot. *Whitfield v. Thurston*, 3 F.4th 1045, 1046–47 (8th Cir. 2021). This Court found the case moot because the plaintiff had not pleaded an intent to run as an Independent and be subject to the same ballot-appearance restrictions again. *See id.* at 1047–48. The Court recognized, however, that when the same party has reason to fear application of the "challenged regulations" again, the case is capable of repetition. *Id.* at 1048. Here, the allegations of the Complaint showing a repeated history of the Department announcing its intent to send election monitors to Missouri without sufficient explanation satisfies the capable-of-repetition standard. *See id.*

The several complained of incidents where the Department sent election monitors to Missouri without adequate explanation shows that

the State has reason to expect another occurrence. Nothing prevents the Department from doing as much. Missouri is therefore entitled to a judgment on the merits to accord it any necessary prospective relief.

### B. This matter will evade review.

This dispute will evade review if found moot. The district court and the Department rely heavily on the argument that the State could have challenged the settlement agreement at any time before the 2024 general election. Appellees' Br. 18–19; App. 191–92; R. Doc. 33 at 5–6. But this is the reddest of red herrings. The Complaint alleges that the Department violated to Administrative Procedure Act by refusing "to specifically identify any federal law that they believe[d] authorize[d] their actions." App. 13; R. Doc. 1 at 7. The Complaint does not challenge the validity of the settlement agreement or argue that it did not allow the Department to send election monitors. *See generally* App. 7–17; R. Doc. 1. And the Department's alleged history of announcing election monitors both before the settlement agreement and outside of St. Louis establishes that the agreement's expiration will not prevent the Department from continuing the complained of activity. *See* App 11; R. Doc. 1 at 5; *see also Alaska*, 17 F.4th at 1229 n.5.

The Department announced its intent to send election monitors to St. Louis on November 1, 2024. App. 19–23; R. Doc. 1-2. That is the moment the Administrative Procedure Act violation occurred. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (holding that an agency must "supply a reasoned basis for the agency's action" (internal quotation omitted)). The fact that the Department later produced a justification for using election monitors in St. Louis provides it no antidote to this case. *See id.* at 50 ("[C]ourts may not accept appellate counsel's *post hoc* rationalizations for agency action."); *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained."). Hence, the existence of the settlement agreement authorizing election monitors should be ignored in its entirety.

Only a handful of days separate the agency action and the event that the Department asserts moots this case (the election). A challenge to the Department's actions under the Administrative Procedure Act cannot be litigated in such a short timeframe. *See* Appellants' Br. 18–19. Tellingly, the Department does not attempt to argue that mere days

suffice to litigate a case like this. *See* Appellees' Br. 20 (disputing the repetition issue). This issue will evade review and this Court should hold that the case is not moot.

## II. The Department has not carried its burden regarding voluntary cessation.

The Department primarily argues that the State cannot identify a specific action that constitutes voluntary cessation—and hence the doctrine does not apply. Appellees' Br., 26–27. The argument goes nowhere. First, there have been voluntary actions by the Department—namely, its reliance on the settlement agreement's expiration in suggesting that Missouri cannot fear future conduct. *See* Appellants' Br. 24 (describing the Department's litigation position). Second, the Department retains full control over the decision to send election monitors. Thus, the Department has not carried its "formidable" burden of showing that the challenged conduct cannot be reasonably expected to recur. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

The dispute at the heart of this case is whether the Department provided sufficient legal authority when it sent election monitors to

Missouri polling places. App. 7–8; R. Doc. 1 at 1–2. Since being sued, the Department has reversed itself, now claiming that a settlement agreement or similar authority is necessary to engage in election monitoring. *Compare* Appellees' Br. 20–21 (expiration of settlement agreement means "there is no existing reason to fear" future election monitoring), *with id.* 6–7 (Cole County election monitoring based on mere investigation into civil rights compliance). But the Department cannot paper over and escape its original position—that of the press release—which did not predicate sending election monitors on the settlement agreement. *See Chenery Corp.*, 318 U.S. at 95. So, the Department has (improperly, *see id.*) changed position. And without this change of position, the Department would have a tough battle.

Specifically, the State would still have an obvious fear of election monitoring on the most scant reasoning (as has happened in the previous two elections), which would keep the dispute alive. *See FBI v. Fikre*, 601 U.S. 234, 241 (2024). Ultimately, "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" rests with the Department. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). For good reason—the Department must

show that it's not conveniently changing position to moot out this case and remain "free to return to [its] old ways." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (citation omitted).

This is the exact case that the voluntary cessation exception is designed to protect. Voluntary cessation comes with a high burden for the party claiming mootness because "[w]ere the rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off; it might even repeat 'this cycle' as necessary until it achieves all of its" goals. *Fikre*, 601 U.S. at 241 (citation omitted); *see also, e.g.*, *Doris Behr 2012 Irrevocable Tr. v. Johnson & Johnson*, No. 22-1657, 2023 WL 3316329, at *3 (3d Cir. May 9, 2023) (recognizing that a "changed position amounts to voluntary cessation of a challenged action"). The Department has presently disclaimed any basis for sending election monitors into Missouri in the future. *See* Appellees' Br. 21–25. But nothing stops the Department from reversing course the moment this Court finds this case moot and beginning the cycle all over again. *See Alaska*, 17 F.4th at 1229 n.5.

The Department also relies on the fact that the settlement agreement with the City of St. Louis would have ended before the next

election. Appellees' Br. 26–27. But this again mischaracterizes the nature of the dispute. At no point, in the district court or on appeal, has Missouri challenged the fact that the settlement agreement gave the Department authority to conduct election monitoring. App. 13–16; R. Doc. 1 at 7–10.

The only issue actually in dispute is whether the Department followed the Administrative Procedure Act by *providing* the basis of its authority. App. 13–16; R. Doc. 1 at 7–10. The expiration of the Department's purported legal authority to engage in election monitoring has zero relevance to this case—especially in light of the 2022 Cole County election monitoring, which the Department did not have any court-ordered-authority to conduct. *See* Appellees' Br. 7–8; *see Dep't of Com. v. New York*, 588 U.S. 752, 787 (2019) ("We do not hold that the agency decision here was substantively invalid. But agencies must pursue their goals reasonably. Reasoned decisionmaking under the Administrative Procedure Act calls for an explanation for agency action.").

The Department's continued violations of the Administrative Procedure Act by sending election monitors to other States without

sufficient explanation underscores that this case is not moot—and that its changed position is all too convenient. As it notes, the Department has regularly sent election monitors to jurisdictions across the country relying only on vague references to voting-related statutes. *See* Appellees' Br. 6–7 n.1. And it has sent election monitors to jurisdictions with similar bare-bones justifications during the pendency of this appeal.[2] The Department has not shown that it has ceased activity such that Missouri's claimed fears are now baseless.

* * *

If this Court affirms, the continuation of the cycle is obvious. The Department will announce election monitoring on the eve of some future election. When the election passes and before a court can decide the issue, the Department will claim that the case is moot and that there is no reason to believe it will send election monitors in the future. This is nothing more than an attempt to evade the consequences of its actions. This case is not moot and this Court should reverse.

---

[2] *See supra* n.1.

## CONCLUSION

This Court should reverse the district court's judgment and remand for further proceedings.

Respectfully submitted,

**CATHERINE L. HANAWAY**
Missouri Attorney General

LOUIS J. CAPOZZI, III
Missouri Solicitor General

/s/ *William J. Seidleck*
William J. Seidleck #77794MO
*Principal Deputy Solicitor General*
Ryan Dugan #77805MO
Victoria Lowell #76461MO
*Assistant Solicitors General*
Office of the Missouri Attorney General
207 W. High Street
Jefferson City, MO 65101
Phone: (573) 301-5359
William.Seidleck@ago.mo.gov
Ryan.Dugan@ago.mo.gov
Victoria Lowell@ago.mo.gov

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(i) in that it contains 3,066 words excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) in that this document has been prepared in a proportionally spaced typeface using Microsoft Word (size 14 Century Schoolbook font).

/s/ *William J. Seidleck*
William J. Seidleck
*Principal Deputy Solicitor General*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system. Counsel for Appellee will receive a copy of the foregoing document through the CM/ECF system on August 24, 2026.

/s/ *William J. Seidleck*
William J. Seidleck
*Principal Deputy Solicitor General*